IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARTIN E. ZUCKER,                                    CV 05-6235-MA

       Plaintiff,                                OPINION AND ORDER

v.

JO ANNE B. BARNHART,
Commissioner of Social
Security,

       Defendant.

MARK MANNING
CRAM, HARDER, WELLS & BARON, P.C.
474 Willamette, Suite 200
Eugene, OR 97401
(541) 686-1969

       Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053

1  -  OPINION AND ORDER

FRANCO L. BECIA
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2114

        Attorneys for Defendant

MARSH, Judge.

    Plaintiff filed a civil action for judicial review of the Commissioner's final decision denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33.  Plaintiff alleges the Administrative Law Judge (ALJ) erred in finding he is not entitled to benefits and seeks an order reversing the Commissioner's decision and remanding the case for an award of benefits.  The Commissioner contends her decision is based on substantial evidence and free from legal error and requests the court to affirm her decision.

    This court has jurisdiction under 42 U.S.C. § 405(g).  For the following reasons, I **AFFIRM** the final decision of the Commissioner and **DISMISS** this action.

<u>BACKGROUND</u>

    Plaintiff applied for benefits on November 24, 2003, alleging disability as of December 16, 1997.  Plaintiff's application was denied initially and on reconsideration. Plaintiff requested a hearing, which was held before an

Administrative law Judge (ALJ) on November 16, 2004.  On March
18, 2005, the ALJ issued a decision finding that plaintiff was
not eligible for benefits.  On July 15, 2005, the Appeals Council
denied plaintiff's request for review and the ALJ's decision,
therefore, became the final decision of the Commissioner for
purposes of judicial review.

## LEGAL STANDARDS

The initial burden of proof rests on the plaintiff to
establish disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th
Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  To meet this
burden, the plaintiff must demonstrate the inability "to engage
in any substantial gainful activity by reason of any medically
determinable physical or mental impairment which . . . has lasted
or can be expected to last for a continuous period of not less
than 12 months."  42 U.S.C § 423(d)(1)(A).  The Commissioner
bears the burden of developing the record.  DeLorme v. Sullivan,
924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.  42
U.S.C. § 405(g).  "Substantial evidence means more than a mere
scintilla but less than a preponderance; it is such relevant
evidence as a reasonable mind might accept as adequate to support

a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

## DISABILITY ANALYSIS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled. Bowen v. Yuckert, 482 U.S.137, 140 (1987). See also 20 C.F.R. § 416.920. The claimant bears the burden of proof at steps one through four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

At Step One, the ALJ found plaintiff had not engaged in substantial gainful activity since the onset of his alleged disability. 20 C.F.R. §§ 404.1520(b).

At Step Two, the ALJ found plaintiff suffers from impairments including post-traumatic stress disorder (PTSD) and degenerative disc disease at C5-C7 that are considered severe within the meaning of 20 C.F.R. §§ 404.1520(c).

At Step Three, the ALJ found plaintiff's impairments

did not meet or equal one of the listed impairments that would preclude substantial gainful activity.  See 20 C.F.R. §§ 404.1520(a)(4)(iii) and (d).  Based on the above impairments, the ALJ found plaintiff has the residual functional capacity to lift 50 lbs. occasionally and 20 lbs. frequently, stand, walk, and sit for up to six hours total in an eight-hour day, have no interaction with the general public, have no close interaction with co-workers, no work in crowded conditions, and perform only simple routine tasks.

At Step Four, the ALJ found plaintiff was not able to perform his past relevant work as a house painter or yard maintenance worker.

At Step Five, the ALJ found plaintiff cannot perform the full range of medium work, but is able to perform a significant range of medium to light work, including the jobs of groundskeeper, laundry worker, and motel cleaner, which jobs exist in substantial numbers in the national and regional economy.

Accordingly, the ALJ found plaintiff was not under a disability.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

## DISCUSSION

The ultimate issue is whether plaintiff presented sufficient credible evidence to meet his burden of establishing that his

PTSD precludes him from engaging in substantial gainful activity, thereby rendering him disabled.  Plaintiff concedes his back pain, while limiting his ability to perform his past work as a house painter, does not "necessarily" preclude him from performing "all work."  Plaintiff, however, contends that, as to his PTSD, the ALJ erred in (1) discrediting the opinion of two Veteran's Administration (VA) physicians who found Plaintiff had a 70% service-related disability, and (2) failing to provide clear and convincing reasons for discrediting plaintiff's testimony regarding the effect of his PTSD on his ability to hold jobs.

For the following reasons, I find the ALJ did not err and agree with the Commissioner that plaintiff has failed to meet his burden of establishing he is disabled for purposes of social security disability insurance.

**Plaintiff's Educational/Military/Employment Background.**

Plaintiff was 55 years old on the date of the final decision denying his claim for benefits.  He has a high school diploma and two years of college credits, earned after his military service.

Plaintiff is a Marine Corps veteran who served two periods of service on active duty as a field radio operator:  June 1967- June 1971, and July 1972-July 1974.  He was honorably discharged on both occasions.  He served a fifteen month tour of duty as a forward observer in South Vietnam in an area south of the city of

Da Nang, and was awarded a combat action ribbon.  During that tour of duty, plaintiff was involved in traumatic combat actions, including a firefight in which approximately half the members of his platoon were killed.  He also saw the aftermath of an attack on a village that resulted in many dead and mutilated people, and witnessed an American soldier scalping one woman and another woman being decapitated by a pop-up flare while she was being interrogated by American troops.

After his discharge from the service, plaintiff worked primarily as a house painter, and occasionally as a yard maintenance and clean up worker.  In 18 of the years since Plaintiff developed PTSD, his reported earnings exceeded the minimum amounts required to constitute substantial gainful activity.  Plaintiff did not report earnings from 1983-1985 and 1992-1994.  The onset of plaintiff's claimed disability, however, did not occur until December 1997.

From November 1999 until October 2003, plaintiff was incarcerated in Oregon following his conviction for First Degree Burglary.

**Plaintiff's Medical History.**

As noted, plaintiff's relevant medical issues are degenerative disc disease at C5-C7 and PTSD.

**Degenerative Disc Disease.**

Plaintiff asserts he injured his lower back and left

shoulder while painting in 1996.  He was treated by Edward
Lanway, D.C., for mid- and low-back pain on eleven occasions in
July and August 1996 and on four occasions in December 1997 and
January 1998.  On each occasion, Dr. Lanway manipulated
plaintiff's spine chiropractically and on most occasions applied
heat to the sore areas.  The chiropractic treatments in 1996 for
the most part resulted in some improvement in plaintiff's
condition while the later treatments resulted in "much
improvement."

In April 1998, plaintiff underwent a medical examination by
Raymond P. Green, M.D., at the Roseburg Veteran's Administration
Medical Center.  X-Rays revealed mild osteophytosis (bony
outgrowth) in the lumbar spine.

In May 1998, plaintiff was examined by VA physician Paul
Helgason, M.D., for a complaint of right shoulder pain that
plaintiff described as starting in January 1998, about one month
after plaintiff injured himself moving a bookcase.  Dr. Helgason
diagnosed right bicipital tendinitis, low back pain, thoracic
back pain, and posttraumatic osteoarthritis.

**PTSD.**

In February 1998, Plaintiff filed a claim with the VA for
veterans benefits, alleging PTSD directly related to his Vietnam
tour of duty.

In April and June 1998, plaintiff was interviewed by VA psychologist, Allan Kirkendall, Ph.D., in connection with his VA disability claim.  Plaintiff told Dr. Kirkendall he has worked for "an (sic) excess of 20 employers since military service and has established no stable work history."  Plaintiff described working hard over the years to control his anger and "remains irritable to this day."  He has avoided anything associated with the government, the military, the VA, and veteran associations, has never felt a part of American society, and is reluctant to discuss his experience in Vietnam.  Plaintiff reported problems with sleep and anxiety, daily intrusive thoughts and flashbacks of his experiences in Vietnam and when he is "exposed to events that might symbolize the military, [he] becomes sweaty, his heart races, and he has difficulty breathing."  Plaintiff became "extremely emotionally distressed as [he] began the discussion [with Dr. Kirkendall] regarding specifics of Vietnam."

Following his interviews with plaintiff, Dr. Kirkendall diagnosed PTSD, "chronic and severe."  He specifically repeated Plaintiff's self-reported employment history, stating that plaintiff had "worked for an (sic) excess of 20 employers since returning from Vietnam, and in the process, he has established no stable work history."   Based in large part on that history, Dr. Kirkendall opined that "at this point [plaintiff] is unemployable due to his PTSD."  Dr. Kirkendall also assigned a GAF score of

30,[1] which describes behavior that "**is considerably influenced by delusions or hallucinations OR serious impairment in communication and judgment** (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) **OR inability to function in almost all areas** (e.g. stays in bed all day, no job, home, or friends)." <u>Diagnostic and Statistical Manual of Mental Disorders, DSM-IV (4th Ed. 1994)</u> at 32 (emphasis in original). Based on his evaluation, Dr. Kirkendall found plaintiff was 70% disabled and, because of the finding that plaintiff was unemployable, plaintiff was awarded a 100% disability rating.

On May 29, 2004, Paul D. Zeltzer, M.D., reviewed plaintiff's disability evaluation. Dr. Zeltzer recited a similar history that plaintiff provided to Dr. Kirkendall. Dr. Zeltzer noted plaintiff's social history reflected he was comfortable with "several Vietnam veterans," has "occasional conversations with female acquaintances," but "[o]therwise he currently has minimal social activity." Dr. Zeltzer also noted plaintiff's "thoughts of suicide are intermittent and without plan or intent," and "his judgment is also felt to be good and is likely to have been improved since he was incarcerated." Dr. Zeltzer diagnosed "combat-related, severe, chronic" PTSD and assigned a GAF score of 40: "**Some impairment in reality testing or**

---

[1] Global Assessment of Functioning.

**communication** (e.g., speech is at times illogical, obscure or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work)." DSM-IV at 32 (emphasis in original). This score was based in part on Dr. Zeltzer's summary of plaintiff's condition: "Mr. Zucker cannot keep a job and has been determined to be unemployable."

## Analysis

The ALJ reached his non-disability determination after discrediting plaintiff's hearing testimony and his self-reporting to Drs. Kirkendall and Zeltzer regarding his ability to hold onto a job and avoid being fired because of his behavior attributable to PTSD. As noted above, the VA physicians placed considerable stock in plaintiff's supposed inability to maintain any stable work history and the fact he had been employed by "an (sic) excess of 20 employers."

**Failure to Credit Plaintiff's Testimony.**

The ALJ, among other things, did not believe plaintiff's testimony that his PTSD prevented him from holding on to a job.

A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce'" the symptoms alleged. (the <u>Cotton</u> test). <u>Bunnell v.</u>

11 - OPINION AND ORDER

<u>Sullivan</u>, 947 F.2d 341, 344 (9th Cir. 1991)(quoting 42 U.S.C. § 423(d)(5)(A) (1988)).  <u>See also</u> <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1407-08 (9th Cir. 1986).  The claimant need not produce objective medical evidence of the symptoms or their severity.  <u>Smolen v. Chater</u>, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If the claimant has met the standards set out in the <u>Cotton</u> test and there is no affirmative evidence to suggest the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony regarding the severity of his symptoms.  <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993).  <u>See also</u> <u>Smolen</u>, 80 F.3d at 1283.

To determine whether the claimant's subjective testimony is credible, the ALJ may rely on, <u>inter</u> <u>alia</u>, ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid, as well as any unexplained failure to seek treatment.  <u>Id</u>. at 1284 (citations omitted).

Here, there is no affirmative evidence of malingering by plaintiff.  The issue, therefore, is whether the ALJ gave clear and convincing reasons for not crediting plaintiff's testimony. I find he did, on two counts.

First, the ALJ noted correctly there is no medical evidence plaintiff sought any treatment for PTSD until he applied for

veteran's disability benefits in 1998.

Second, Plaintiff testified at the hearing that he had been
fired:

> [a]pproximately seven, eight times for losing
> my temper, Other times it was just for
> missing too much work.  A lot of times – you
> know, I have depression and I'd wake up in
> the morning and just couldn't -- you, I'd
> call in sick.  So, those other times I got
> fired because I just missed too much work.

TR 464.  Plaintiff also testified, however, the last time he
was fired was "[a]bout '80 – I don't know.  About '90 or so I
got fired – was the last time I got fired."  In his last job
from 1995-1997, plaintiff testified he did not get fired but
"just quit and got laid off."   The "painting" just "came and
went."  Id.  Plaintiff's earnings record also does not reflect an
employee who was, historically, unemployable.   The ALJ summarized
those reports and stated:

> Therefore, the claimant's earning's were at
> SGA [substantial gainful activity] in 18
> years of the period since he developed PTSD.
> Of those years in which he did not, he earned
> nothing whatsoever in 1983-1985, and from
> 1992-1994 (Exhibit 1D).  Since 1982 when
> records were kept he had only 10 employers.
> The facts do not support a conclusion of
> unemployability.

TR. 24.

On this record, I find the ALJ gave clear and convincing
reasons why she did not credit plaintiff's testimony regarding
his ability to hold down a job.

13 - OPINION AND ORDER

**Failure to Credit VA's Disability Determination.**

The ALJ did not accept the findings of VA Drs. Kirkendall and Zeltzer that plaintiff was unemployable because of PTSD.

"Although a VA rating of disability does not necessarily compel the [Commissioner] to reach an identical result . . . an ALJ must ordinarily give great weight to a VA determination of disability. McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002). "Because the VA and [the Commissioner's] criteria for determining disability are not identical, however, the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." Id.

The ALJ gave specific reasons for not accepting the VA's examining physicians' conclusions regarding plaintiff's employability.  The ALJ noted plaintiff's self-reporting regarding daily activities, e.g., he had stopped outdoor activities, and felt vulnerable outdoors, was belied by other statements he has made that "he walks a dog one or two hours a day" and "feels worse if he does not do it."  Most significant is the ALJ's reasoning that plaintiff misrepresented his past work history and inability to hold a job because of PTSD to the VA physicians:

> The presentation of the claimant to Dr. Kirkendall and Dr. Zeltzer, however, is inaccurate and was made in an attempt to

obtain a VA pension with clear secondary gain
motive.  The record as a whole establishes
that the claimant has been far more
functional than the extreme symptoms he
recites to these examiners would suggest.  A
conclusion based on his self-description
would inevitably be overly negative.

Tr. 24.  The ALJ concluded "[t]he facts [regarding plaintiff's

work history] do not support a conclusion of unemployability."

I find the ALJ gave clear and convincing reasons why she did

not accept the VA's disability determination.

## **CONCLUSION**

For these reasons, the Court **AFFIRMS** the final decision of

the Commissioner and **DISMISSES** this action.

IT IS SO ORDERED.

DATED this 17 day of July, 2006

<u>   /s/  Malcolm F. Marsh   </u>
Malcolm F. Marsh
United States District Judge

15 - OPINION AND ORDER